FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 20, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER ALLEN,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | No. 1:17-CV-03097-LRS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA* |

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 15).

**JURISDICTION**

Jennifer Allen, Plaintiff, applied for Title II Social Security Disability Insurance benefits (SSDI) and Title XVI Supplemental Security Income benefits (SSI) on February 28, 2011. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on February 25, 2013, before Administrative Law Judge (ALJ) Stephanie Martz. Plaintiff testified at the hearing, as did Vocational Expert (VE) Mark Harrington, and Plaintiff's mother, Tracy LaQuay. On March 14, 2013, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review.

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 1**

Plaintiff appealed to federal district court and pursuant to a stipulation by the parties, the matter was remanded to the Commissioner for further proceedings. (ECF No. 23 in 1:14-CV-03177-RMP).

A second administrative hearing was held on January 23, 2017, before ALJ Martz. Plaintiff testified at the hearing, as did VE Harrington, and Plaintiff's mother. Also testifying at that hearing was Medical Expert (ME), John William Davis, Ph.D., a clinical psychologist. On March 27, 2017, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. Plaintiff has a General Equivalency Diploma (GED) and past relevant work experience as a home attendant and customer service representative. She alleges disability since September 1, 2009, on which date she was 24 years old. Her date last insured for SSDI benefits was September 30, 2013.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

*Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) failing to find Plaintiff has severe, medically determinable fibromyalgia; 2) failing to properly assess Plaintiff's obesity, physical impairments and RFC (Residual Functional Capacity); 3) improperly assessing the opinion of ARNP (Advanced Registered Nurse Practitioner) Liu; 4) improperly assessing the medical opinion evidence from acceptable medical sources; and 5) failing to provide specific, clear and convincing reasons for discounting Plaintiff's testimony regarding her symptoms and limitations.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

# DISCUSSION

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) and § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following:

1) Plaintiff has "severe" medically determinable impairments, those being depressive disorder and anxiety disorder;

2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1;

3) Plaintiff has the RFC to perform a full range of work at all exertional levels, subject to the following non-exertional considerations: she needs to avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, and poor ventilation; she can understand, remember and carry out routine tasks in a predictable work environment with few changes; she should avoid working with the public; she ///

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

can work with coworkers on superficial tasks; and she can have occasional contact with supervisors.

4) Plaintiff's RFC precludes her from performing her past relevant work;

5) Plaintiff's RFC allows her to perform jobs existing in significant numbers in the national economy as identified by the VE, including janitor, laundry worker, electrical accessories assembler and small products assembler.

Accordingly, the ALJ concluded the Plaintiff is not disabled.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the purpose of establishing if a claimant has a medically determinable impairment. 20 C.F.R. §§ 404.1513(a); 416.913(a). Their opinions are, however, relevant to show the severity of an

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 6**

impairment and how it affects a claimant's ability to work. 20 C.F.R. §§ 404.1513(d); 416.913(d).

The record reveals a lengthy history of mental health treatment for the Plaintiff. From May 2010 through 2012, Plaintiff was seen by mental health therapists at Yakima Neighborhood Health Services (YNHS), and starting in January 2013, she started receiving mental health services at Central Washington Comprehensive Mental Health (CWCMH).

The ME, Dr. Davis, testified the record was "full of inconsistencies, some duplication, and most of the material is self-reported." (AR at p. 807). He noted there was "no in-patient psych history," that many of the people who worked with Plaintiff were social workers who are not "authoritative sources," and that the majority of mental status examinations (MSE), whether conducted by doctors or therapists, were essentially within normal limits. (AR at pp. 807-08). Dr. Davis asserted that one of the diagnoses of Aaron Burdge, Ph.D., from his August 2012 psychological examination of Plaintiff, was malingering. (AR at p. 808).

The ALJ gave great weight to Dr. Davis' opinion that Plaintiff's "depressive and anxiety disorders caused mild limitations in understanding, remembering, and applying information, and in social interaction;" a "moderate limitation in her ability to concentrate, persist, or maintain pace, and either no limitation or a mild limitation in her ability to adapt or manage oneself;" and that Plaintiff "retained the ability to interact appropriately with a supervisor, sustain casual and infrequent social interaction, and perform tasks involving 5 to 10 small and simple steps." (AR at pp. 789-90). The ALJ found Dr. Davis' opinion "consistent with the objective findings from the record, including mental status tests, routine progress notes, observations from treating medical sources, and the claimant's report of activities." (AR at p. 790).

The clinical findings from Dr. Burdge's August 2012 examination of Plaintiff included: 1) Depression ("Increased need for sleep, concentration problems"); 2)

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

Hypomania ("Hyperactivity, flight of ideas, decreased need for sleep, impulsive behavior"); and 3) Anxiety ("Autonomic hyperactivity, apprehensive expectation, vigilance and scanning, recurrent panic attacks, recurrent nightmares of molestation"). (AR at p. 565). Dr. Burdge diagnosed Plaintiff with Bipolar II Disorder[1] and Anxiety Disorder NOS (Not Otherwise Specified). He assigned her a Global Assessment Functioning (GAF) rating of 55 because of "[m]oderate symptoms of difficulty in social and occupational functioning."[2] (AR at p. 566). He opined that Plaintiff would have "moderate"- those being "significant"- limitations in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision, and in completing

///

---

[1] Like Bipolar I Disorder, the moods attendant to Bipolar II Disorder cycle between high and low. The "up" moods, however, never reach full-blown mania, but are less intense and called hypomania. Most people with Bipolar II suffer more often from episodes of depression. https://www.webmd.com/bipolar-disorder/guide/bipolar-2-disorder#1. In her March 2013 decision, the ALJ found bipolar disorder to be one of Plaintiff's "severe" impairments. (AR at p. 21). In January 2016, Plaintiff's bipolar disorder was deemed to be "stable on current medications." (AR at p. 1144). It appears the manic phase of the disorder was successfully suppressed and therefore, in her 2017 decision, the ALJ found Plaintiff to have "severe" depression instead of "severe" bipolar disorder.

[2] GAF scores in the range of 51 to 60 indicate moderate symptoms (e.g., flat affect, and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

a normal work day and work week without interruptions from psychologically based symptoms. (AR at p. 566).

According to the ALJ, the GAF score of 55 was "indicative of moderate, rather than disabling, limitations in social or occupational functioning." (AR at p. 788). The ALJ found Dr. Burdge's opinion consistent with the "objective observations and clinical findings from the evaluations" and therefore, gave it "significant weight." (AR at p. 788).

The ALJ discussed the PAI (Personality Assessment Inventory) that was taken as part of Dr. Burdge's evaluation, asserting that "malingering was a potential diagnosis based on these results." (AR at p. 788). This is a misstatement of the PAI results. According to the PAI report:

> The PAI clinical profile is marked by significant elevations across several scales, indicating a broad range of clinical features and increasing the possibility of multiple diagnoses. **Given certain response tendencies previously noted, it is possible that the clinical scales may overrepresent or exaggerate the actual degree of pscyhopathology. Nonetheless, profile patterns of this type are usually associated with marked distress and, unless there is extensive distortion or exaggeration of symptomatology, severe impairment in functioning is typically present.** The configuration of the clinical scales suggests a person with significant thinking and concentration problems, accompanied by prominent agitation and distress. The respondent is likely to be withdrawn and isolated, and she may have few if any close interpersonal relationships and may get quite anxious and threatened by such relationships. Her social judgment is probably fairly poor and she has difficulty making decisions, even about matters of little apparent significance.

(AR at p. 574)(emphasis added).

"Malingering" was not among the "*DSM-IV* Diagnostic Possibilities" discussed in the report. (AR at pp. 578-79). With regard to "Critical Item Endorsement," "potential malingering" was mentioned as to two statements made by the Plaintiff (AR at p. 580), but with the caveat that "[e]ndorsement of these critical items is not in itself diagnostic, but review of the content of these items with the respondent may help to clarify the presenting clinical picture." (AR at p. 579).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

"Malingering" was not a diagnosis or even a potential diagnosis based on the PAI results. Dr. Davis erred in concluding to the contrary. There simply is not "affirmative evidence" of malingering or symptom exaggeration in the record. The ALJ erred in relying on Dr. Davis' conclusion and this led her to incorrectly assess the opinions of the other examining psychiatrists, psychologists and mental health therapists.

Dr. Davis cited lack of in-patient psychiatric care, long-term counseling or therapeutic programs, as not supporting Plaintiff's claimed inability to deal with stress. (AR at p. 827). While Plaintiff apparently did not have any in-patient care, the record establishes a lengthy and regular course of mental health counseling and therapy with YNHS and then CWCMH. Furthermore, not all of the mental status examinations were "essentially normal," as contended by Dr. Davis. (See e.g., AR at pp. 343, 346, 354, 359, 375, 382, 424, 501, 509, 514, 619, 639, and 651).

The opinion of Rebekah A. Cline, Psy. D., was one of the medical opinions the ALJ discounted because of her incorrect assertion there was "affirmative evidence of symptom exaggeration" in the record. Dr. Cline evaluated the Plaintiff in June 2014. Plaintiff was administered the Rey 15-Item Memory test for malingering. She scored a 15 which "indicates excellent effort and cooperation with the task and decreases the likelihood that she is malingering at this time." (AR at p. 1029). Plaintiff scored a 36 on the BDI-II (Beck Depressive Inventory) indicating a "moderate to marked level of depression," and scored a 31 on the BAI (Beck Anxiety Inventory) indicating a "moderate level of anxiety." (AR at p. 1029). Dr. Cline's "Clinical Findings" included: 1) moderate depressed mood/mood instability (chronically depressed with no manic episode in three years); 2) marked anxiety/panic; 3) moderate to marked sleep disturbance; and 4) moderate social difficulty. (AR at p. 1030). She diagnosed Plaintiff with "Bipolar I disorder, most recent episode depressed, moderate, with psychotic features," panic disorder and agoraphobia. (AR at p. 1030). She assigned

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 10**

Plaintiff a GAF score of 55 and opined that Plaintiff had numerous "moderate" limitations and "marked"- very significant- limitations in her abilities to communicate and perform effectively in a work setting and to complete a normal work day and work week without interruptions from psychologically based symptoms. (AR at p. 1031). Dr. Cline's MSE of Plaintiff was not within normal limits with regard to thought process and content (recent suicidal ideation and history of attempts) and perception (intermittent paranoia and auditory hallucinations). (AR at p. 1032).

Dr. Cline evaluated Plaintiff again in August 2015. Plaintiff again scored a 15 on the Rey-15 Item Memory Test and a 31 on the BAI. This time, she scored 40 on the BDI-II, an increase over the 36 she had scored previously and which suggested a marked level of depression. (AR at p. 1034). This time, Dr. Cline diagnosed Plaintiff with "major depressive disorder, recurrent, marked," noting it had been four years since Plaintiff's last manic episode, thereby making it the more appropriate diagnosis as opposed to bipolar disorder. Dr. Cline also diagnosed Plaintiff with "anxiety disorder NOS with features of panic disorder, agoraphobia, and social anxiety disorder" and with Post-Traumatic Stress Disorder (PTSD). (AR at p. 1035). This time, Dr. Cline opined Plaintiff had a "severe" limitation in her ability to communicate and perform effectively in a work setting, and "marked" limitations in asking simple questions or requesting assistance, maintaining appropriate behavior in a work setting, and completing a normal work day and work week without interruptions from psychologically based symptoms. (AR at p. 1036). A "severe" limitation is the inability to perform the particular work activity in regular competitive employment or outside of a sheltered workshop. (AR at p. 1035). Dr. Cline again opined that Plaintiff's MSE was not within normal limits with regard to thought process and content, and with regard to perception. (AR at p. 1037).

The ALJ found that Dr. Cline's 2014 opinion was inconsistent with YNHS treatment records of Advance Registered Nurse Practitioner (ARNP) Schwarzkopf

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 11**

from August 2014 showing no complaints by Plaintiff of frequent panic attacks, nightmares, paranoia and hallucinations; observing appropriate interaction by Plaintiff; and with Plaintiff reporting her sleep and mood had improved. (AR at p. 789). The ALJ found Dr. Cline's 2015 opinion was inconsistent with YNHS treatment notes of ARNP Dennis from August 2015, observing that Plaintiff presented with an appropriate mood and affect, with normal insight and judgment, and with no indication she was suffering from paranoia, delusions, or hallucinations. (AR at p. 789). It is noted that Plaintiff saw ARNP Dennis for primarily a gynecological examination regarding polycystic ovaries and also to address her low back pain. (AR at p. 1157). Plaintiff saw ARNP Schwarzkopf for a variety of physical issues including hypothyroidism, polycystic ovaries, bronchitis, and fibromyalgia. (AR at p. 1195). These nurse practitioners performed perfunctory "Neuro/Psychiatric" reviews as part of their "Review of Systems," but they are not mental health specialists and Plaintiff's mental health was not the focus of their treatment.

The opinion of Dr. Davis, the ME, was not supported by other evidence in the record and was not consistent with other evidence in the record. His opinion was not a specific and legitimate reason for the ALJ to reject Dr. Cline's opinions, nor did the ALJ offer any other specific and legitimate reasons supported by substantial evidence to reject Dr. Cline's opinions.

The ALJ gave little weight to the opinion of Jesse McClelland, M.D., a psychiatrist who evaluated Plaintiff on May 21, 2011. Based on a MSE, Dr. McClelland diagnosed Plaintiff with "Bipolar II disorder, rapid cycling; most recent episode hypomanic" and "Posttraumatic stress disorder, delayed onset, chronic." (AR at p. 443). He assigned the Plaintiff a GAF score of 22 "due to severe impairment in multiple areas of functions[] (current)." (*Id*.). A GAF score in the 21 to 30 range includes behavior considerably influenced by delusions or hallucinations, or serious

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation), or inability to function in almost all areas (e.g, stays in bed all day; no job, no home or friends).[3] Dr. McClelland opined Plaintiff "would likely have difficulty attending the workplace regularly due to her problems with panic attacks and increasing difficulty in leaving the house" and "would likely have interruptions during the workday for panic attacks and during the work week from being too anxious or depressed to go in or being hypomanic and having some level of impulsivity impact her going in or leaving." (AR at p. 444). The doctor also noted, however, that Plaintiff did not have access to mental health services at the time and "[i]f she is able to receive appropriate care, which should include both medications and psychotherapy, she has a good chance of showing improvement in her symptoms." (AR at p. 443).

The record indicates there was subsequent improvement in Plaintiff's symptoms, presumably due to medications and psychotherapy, such that bipolar disorder was no longer one of Plaintiff's diagnosed conditions. Furthermore, Drs. Burdge and Cline assigned Plaintiff GAF scores (55) considerably higher than the 22 assigned by Dr. McClelland. Indeed, the GAF score of 22 is a striking outlier in the numerous GAF scores assigned to Plaintiff in the medical record, suggesting that at best, it captured Plaintiff's mental condition during a very limited period of time. Accordingly, the court considers Dr. McClelland's 2011 opinion of limited relevance in determining when Plaintiff became disabled for a continuous period of 12 months or longer.

**SYMPTOM TESTIMONY**

---

[3] *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ discounted Plaintiff's testimony about her mental health symptoms in large part because of the PAI results which, as discussed above, the ALJ erroneously found constituted "affirmative evidence of malingering" and "affirmative evidence of symptom exaggeration, negative impression management, and/or malingering." (AR at pp. 782-83). The ALJ also asserted that Plaintiff's "candid presentation to medical sources, outside of evaluations in connection [with] disability benefits, is not consistent with allegations of disabling functional limitations." (AR at p. 782). Yet none of the "medical sources" to which the ALJ cites are mental health therapists. They are nurse practitioners the Plaintiff saw in conjunction with primarily physical problems.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

The ALJ also found that Plaintiff's activities were inconsistent with allegations of disabling functional limitations, noting that during a July 2013 appointment, Plaintiff indicated she was engaged in aqua-therapy (water walking) three times per week; in August 2016, she reported that she went swimming "almost daily" and "went on an hours-long journey in the confines of a bus to attend a friend's wedding in another state;" and was able to volunteer at the Human Society to help staffers and to go outside and walk dogs, an activity which she continued until she was asked to interact more with the public. (AR at p. 783).

The Ninth Circuit has recognized there are differences between activities of daily living and full-time employment. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen v. Chater*, 80 F.3d 1273, 1287 n. 7 (9th Cir. 1996). See also *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer"). Because "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit had held that "[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." *Reddick*, 157 F.3d at 725.

It is not apparent how the Plaintiff's activities cited by the ALJ indicate an ability to perform in a work environment. Even assuming they do, the record does not reveal that Plaintiff was, as declared by the ALJ, "able to go out, commit to, and sustain" these activities. (AR at p. 783). There is no indication in the record that any of these activities continued for a sustained period of time. Notwithstanding that

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

Plaintiff took a trip to Boston in 2012 and another trip to Idaho in 2016, the record reflects an individual who is severely socially isolated as a result of her mental impairments and essentially living an "online" existence. For example, while the record indicates Plaintiff advised she had a boyfriend in New Zealand, there is no indication she ever traveled to see him, but instead this was an online relationship in which the two of them would "skype" each other. (AR at p. 592).

The ALJ stated Plaintiff "acknowledged that she socialized with others by going to friends' homes approximately 4 to 5 times per week, where she watched and played video games." (AR at p. 779). This assertion, however, is derived not from a form completed by the Plaintiff, but one completed by her mother and moreover, does not indicate Plaintiff "goes to friends' homes," but at best, suggests she stays home and plays on her own computer and interacts with others via that computer. (AR at p. 248).

Elsewhere in her decision, the ALJ asserted that Plaintiff told treating sources she did not have sleep problems, but told Dr. McClelland in May 2011 she never slept more than two hours at a time and had terrible nightmares that prevented her from sleeping at all. (AR at p. 785). The record, however, reflects that "sleeping problems" were something Plaintiff consistently reported to therapists at YNHS both before and after her evaluation by Dr. McClelland. (See e.g., pp. 343, 346, 354, 359, 363, 367, 371, 375, 382, 413, 417, 420, 424, 501, 509, 514, 615, 619. 623, 631, 639. 651, 655, 659, 662 and 695).

The ALJ also asserted that while Dr. McClelland noted that Plaintiff presented with some psychomotor retardation, such clinical observations were "notably absent" from Plaintiff's treating sources. (AR at p. 785). To the contrary, there were instances of such clinical observations from treating sources. (See e.g., pp. 346, 354, 375, 424, 501 and 509 referring to Plaintiff exhibiting "hypoactive" psychomotor or "limp" behavior).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 16**

In sum, the ALJ did not offer clear and convincing reasons for discounting Plaintiff's testimony regarding her mental health limitations. Her testimony is consistent with what examining medical sources opined about her limitations, in particular Dr. Cline.

**REMAND AND DISABILITY ONSET DATE**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Treichler*, 775 F.3d at 1099, citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id*. at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*. Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 17**

testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings." *Id.*, quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied- ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits. *Id.* But even when those "rare circumstances" exist, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Id.* at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

The court finds all three elements are satisfied in this case. In light of the fact this case has already been remanded once to the Commissioner for what the ALJ accurately described as "start[ing] over" and "reevaluat[ing] basically everything" (AR at p. 802), the court exercises it discretion to award benefits to the Plaintiff.[4]

---

[4] Because the limitations arising from Plaintiff's mental health impairments are severe enough to find her disabled, it is not necessary to address the limitations arising from any physical impairments.

In his July 2010 assessment, ARNP Edward Liu opined only mild physical limitations which would not significantly interfere with Plaintiff's ability to perform basic work-related activities. (AR at p. 480). And while he opined that Plaintiff was limited to sedentary work, he also opined that Plaintiff's limitations would continue for three months without medical treatment. (AR at p. 481).

Nina Flavin, M.D., did not definitively diagnose the Plaintiff with fibromyalgia until July 2014 (AR at p. 1242) which is after the date the court has deemed Plaintiff disabled based solely on her mental limitations.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 18**

There is a question about the appropriate disability onset date which the court will resolve. Plaintiff suggests the "moderate" limitations opined by Dr. Burdge in August 2012 , to which the ALJ gave "significant weight," are sufficient to compel a finding of disability as evidenced by the VE's testimony at the administrative hearing. (AR at pp. 850-52). It is not clear, however, that the VE's testimony in fact evidences this. Although the VE testified that one unscheduled or unexcused absence per month would make an employee subject to termination (AR at p. 850), he did not testify this was the same as the "moderate" limitations opined by Dr. Burdge. In fact, the ALJ prevented Plaintiff's counsel from asking the VE to assume Plaintiff had a "very significant inability to complete a workday" unless counsel was willing to define that "in functional and vocational terms." (AR at p. 851).

The court finds the "marked" limitation opined by Dr. Cline in June 2014 regarding Plaintiff's ability to perform effectively in a work setting and complete a normal work day and work week without interruptions from psychologically based symptoms clearly establishes Plaintiff's disability and is consistent with the monthly unscheduled or unexcused absence the VE testified would result in termination of employment. Accordingly, Plaintiff is deemed disabled as of June 13, 2014.[5] As such, she will not be awarded Title II SSDI benefits because her date last insured for

///

---

[5] Tae-Im Moon, Ph.D., evaluated the Plaintiff in February 2012, but he did not assess specific work-related functional limitations. He indicated Plaintiff's ability to get along with co-workers and deal with the public was "fair to poor" and that "[r]eliability may be an issue during [the] depressive phase of her illness (sleeps 13 hrs)." (AR at p. 546). He also, indicated, however that "[w]hen she is stabilized on medication for mood disorder, DVR referral may assist her [to] find work" and that she may be able to work as an online researcher. (*Id.*).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 19**

those benefits was September 30, 2013, but she will be awarded Title XVI SSI benefits.

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 15) is **DENIED**. The Commissioner's decision is **REVERSED**. Pursuant to sentence four of 42 U.S.C. § 1383(c)(3), this matter is **REMANDED** to the Commissioner for an immediate award of Title XVI SSI disability benefits based on Plaintiff becoming disabled as of June 13, 2014.[6] An application for attorney fees may be filed by separate motion.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this ___20th___ day of March, 2018.

*s/Lonny R. Suko*

LONNY R. SUKO
Senior United States District Judge

---

[6] Onset in SSI cases is established as of the date of the filing provided the individual was disabled as of that date. Social Security Ruling (SSR) 83-20; 1983 WL 31249 at *7. Here, Plaintiff was not disabled as of the date her application for SSI benefits was filed (February 2011). Hence, this is an instance where an onset date must be determined to ascertain when SSI benefits should commence. Benefits are payable no earlier than the month after the month in which all of the eligibility requirements are met. 20 C.F.R. § 416.330(a); SSR 83-20; 1983 WL 31249 at *1.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 20**